UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| LISA C., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:23-CV-075-CHB |
| ) | |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SSA, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Commissioner of Social Security denied Lisa C.'s ("Plaintiff's") application for Disability Insurance Benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). [R. 1]. Both Plaintiff [R. 10] and the Commissioner [R. 14] have filed their respective briefs. Plaintiff also filed a reply brief. [R. 15]. For the reasons that follow, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. The Court will therefore affirm the Commissioner's decision.

**I.   Background**

Plaintiff Lisa C. is 64 years old and has a high school education. *See* [R. 9 (Commissioner's Answer and Administrative Record, hereinafter "Tr."), at 169, 42]. Plaintiff is presently unemployed but has past relevant work experience as a bookkeeper and teller at a bank for approximately twenty-eight years. [Tr. 191, 51–54]. Before that, she worked as a proof machine operator for approximately fifteen years. [Tr. 54–55]. On February 10, 2021, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") under Title II and Part A of Title

XVIII of the Social Security Act, alleging disability beginning on January 1, 2021. [Tr. 168–70, 16]. Plaintiff claims she cannot perform work at substantial gainful levels due to hip, leg, foot, back, and neck problems; depression; and side effects of medication. [Tr. 169, 190, 246]. Plaintiff's application was denied initially and upon reconsideration. *See* [Tr. 79, 89]. At Plaintiff's request, a telephonic[1] hearing was conducted before Administrative Law Judge Jerry Lovitt ("ALJ Lovitt") on May 17, 2022. [Tr. 36–70]. ALJ Lovitt issued an unfavorable decision on May 31, 2022. [Tr. 13–35].

ALJ Lovitt applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Plaintiff has not engaged in substantial gainful activity since January 1, 2021. [Tr. 19]. Second, Plaintiff has the severe impairments of degenerative joint disease, inflammatory arthritis, osteoarthritis, and obesity. *Id.* Third, none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. § 404, Subpt. P, App'x 1. [Tr. 21]. ALJ Lovitt then determined Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations:

> [she could perform] only occasional climbing of ramps/stairs; occasional balancing, stooping, kneeling, and crouching; no crawling; no climbing of ladders, ropes, or scaffolds; [she could have] no exposure to unprotected heights; and no more than frequent exposure to temperature extremes, vibrations and workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost; occasional push of foot controls with the bilateral lower extremities; and [she] would require use of a hand held assistive device for assistance with ambulation only.

[Tr. 23]. Fourth, ALJ Lovitt found Plaintiff capable of performing her past relevant work as a

---

[1] ALJ Lovitt's decision noted that the hearing was held telephonically "due to the extraordinary circumstances presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." [Tr. 16].

proof machine operator, as it does not require the performance of work-related activities precluded by Plaintiff's RFC. [Tr. 30].

ALJ Lovitt thus concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2021, the alleged onset date, through the date of his decision. [Tr. 31]. Plaintiff sought review of ALJ Lovitt's decision. [Tr. 8–12]. The Appeals Council declined review, [Tr. 1], and at that point, the denial became the final decision of the Commissioner, Plaintiff then sought judicial review from this Court. [R. 1].

## II. Standard of Review

"When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may 'not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.'" *McNabb v. Colvin*, No. 3:16CV-00298-DW, 2017 WL 489421, at *2 (W.D. Ky. Feb. 6, 2017) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013).

Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (same). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]"

3

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III. Analysis

Plaintiff raises a single claim of error with respect to ALJ Lovitt's decision—that he "failed to either include mental limitations he found credible in his RFC finding or to explain why he was omitting these credible mental limitations." [R. 10, p. 2]; *see also id.* at 5 n.2 ("[T]he issue is solely whether it was legal error for the ALJ to omit Plaintiff's proven mental functional limitations from the RFC finding without explanation."). In response, the Commissioner argues that "because the ALJ reasonably found at step two that Plaintiff's anxiety/depression was non-severe, which, by definition, means that it did not more than minimally limit her ability to perform basic work activities, no mental functional RFC limitations were required, and Plaintiff has failed to meet her burden to prove otherwise." [R. 14, p. 3]. In her reply, Plaintiff clarifies that she does not challenge ALJ Lovitt's severity findings at step two in the sequential evaluation, and reiterates her position that an ALJ "cannot find credible mental limitations at one step at the sequential evaluation process, then ignore those credible mental limitations at a later step." [R. 15, p. 2].

The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. A claimant's RFC "is to be 'an assessment of her remaining capacity for work' once her limitations have been taken into account." *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). "It is an assessment of what [the claimant] can and cannot do, not what she does and does not suffer from." *Id.* The administrative law judge bases his residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

As stated, in determining Plaintiff's RFC, ALJ Lovitt limited her to "sedentary work," as defined in 20 C.F.R. § 404.1567(a), with several additional limitations. [Tr. 23]. Still, Plaintiff believes ALJ Lovitt erred in failing to either accommodate or discuss her mental limitations in formulating the RFC. [R. 15, p. 2]. Plaintiff suggests ALJ Lovitt should have accommodated her "mild limitations in all four areas of mental functioning: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing herself" in the RFC finding. *Id.* Alternatively, Plaintiff suggests ALJ Lovitt was at least required to "explain why he was omitting them from his RFC" but "he did neither." *Id.* However, review of ALJ Lovitt's decision indicates that he not only considered Plaintiff's alleged mental impairments and the evidence offered in support, but he also explained in detail why he did not include any mental limitations in Plaintiff's RFC—he found them unsupported by objective medical evidence.

First, when assessing the severity of Plaintiff's mental impairments at step two in the sequential evaluation process, ALJ Lovitt discussed his impressions of Plaintiff during the telephonic hearing and Plaintiff's subjective complaints concerning her mental limitations. [Tr. 20–21]. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Secretary of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* (citations omitted). ALJ Lovitt observed that, during the telephonic hearing, Plaintiff "was able to focus sufficiently during the hearing to respond appropriately to questions with detailed explanations," that she "had no

5

difficulty answering questions or recalling information during the hearing," and that her "answers to specific questions were all responsive, well thought out, and appropriate." [Tr. 20]. He further noted that Plaintiff "presented as polite and with no problems communicating at all, was a good historian of the medical history, and was socially engaging with a pleasant and professional demeanor." *Id.*

As for Plaintiff's subjective complaints, ALJ Lovitt noted that Plaintiff did "not allege difficulty with memory or understanding" and "has no problems getting along with others, including authority figures," that "she attends church weekly and has a 'big part' in praying and singing," and that she has "some difficulty with concentrating and completing tasks" but "can manage money, finish things she starts, and generally follow instructions 'fine' if not in pain." *Id.* Plaintiff also "report[ed] that she does not handle stress or changes in routine well," which ALJ Lovitt noted. *Id.* However, ALJ Lovitt pointed out that "the record elsewhere indicates that she can manage personal care independently, prepare simple meals, perform some household chores such as laundry and ironing; use a riding lawn mower; drive; go out alone; shop in stores; and appear appropriately dressed and groomed for appointments." *Id.*

Next, upon review of Plaintiff's treatment history, ALJ Lovitt summarized that "the record reflects very little overall treatment for psychological conditions." [Tr. 21]. He observed that Plaintiff "has reported a history of anxiety/depression and is prescribed Citalopram through her primary care provider." *Id.* Even so, ALJ Lovitt noted that Plaintiff was "described as cooperative and pleasant in treatment records," [Tr. 20], and that she has reported "good results" from the Citalopram and "consistently denies any psychological symptoms on review of systems." [Tr. 21]. Overall, ALJ Lovitt determined that Plaintiff's "longitudinal treatment history does not suggest anything beyond mild limitations," that she "has not ever required any advanced treatment, such

6

as psychiatric hospitalization, inpatient treatment or crisis stabilization," and that she "has not exhibited advanced mental health symptoms, such as suicidal ideations, delusions, hallucinations, or violent behaviors." *Id.* "Rather," ALJ continued, Plaintiff's "treatment records are repeatedly and consistently characterized by stability, a normal presentation, and few, if any, noted symptoms." *Id.*

> Later in his analysis, as part of the explanation for his RFC finding, ALJ Lovitt noted,
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. 404.1520c.

[Tr. 23]. ALJ Lovitt then specifically discussed the opinion evidence concerning Plaintiff's mental health. In considering the medical opinions of record, ALJ Lovitt deemed unpersuasive those of Dr. David Hats and Nurse Stacy Turner, who opined, respectively, that Plaintiff could "perform only low stress work" and would be "incapable of performing even low stress work" and would "be off task more than 25 percent of the time." [Tr. 28]. ALJ Lovitt found that "[t]hese extreme limitations as stated in the opinions are not generally consistent with the overall medical evidence of record" and instead "appear to rely heavily on the claimant's self-reporting of symptoms rather than purely objective, clinical evaluation or criteria." *Id.* Moreover, ALJ Lovitt observed that Dr. Hats's and Nurse Turner's findings were "somewhat internally inconsistent, as well," as "the record supports a reduction to sedentary work," including normal neurological findings on clinical examinations and "the frequent indications of significant improvement in symptoms through treatment." *Id.* ALJ Lovitt thus reasoned that "the disabling limitations opined" by Dr. Hats and Nurse Turner "are not supported by the objective record." *Id.* ALJ Lovitt specifically noted that their findings "regarding the claimant's mental limitations are also not supported by nor consistent

7

with the objective record," as they "appear to mimic the claimant's self-report of symptoms, and largely disregard any data indicating that the claimant is not as severely mentally impaired as she is alleging." *Id.*

On the other hand, ALJ Lovitt deemed "highly persuasive" the opinions of State Agency psychological consultants Dr. Michelle Bornstein and Dr. Jane Brake, who each opined that Plaintiff "has no severe mental impairment with no more than mild limitations in any area of mental functioning." *Id.* ALJ Lovitt explained that the State Agency findings were "well supported by and consistent with the medical record," as they are "consistent with the overall lack of treatment for psychological conditions with frequently normal psychological findings on clinical exams and reviews of systems," *id.*, including negative reports of anxiety, depression, sleep disturbance, irritability, mood swings, or suicidal thoughts or ideation during a December 30, 2020 medical appointment, *see* [Tr. 315], and a consistent notation of no abnormal neurological or psychological symptoms during medical appointments in October and December of 2020, [Tr. 436, 325], through appointments in January, February, May, and October of 2021, [Tr. 331, 336, 467, 499, 502, 505].

Finally with respect to Plaintiff's alleged mental impairments, ALJ Lovitt considered the third-party function reports from Plaintiff's daughter, although he acknowledged that the reports do not constitute an acceptable medical source under the regulations and cannot, therefore, be persuasive "as to work-related abilities." [Tr. 29]; *see also* 20 C.F.R. §§ 404.1520c; 416.920c. Even so, ALJ Lovitt considered Plaintiff's daughter's observations concerning Plaintiff's ability to "perform activities of daily living, as well as observations regarding the claimant's social and mental abilities," including the fact that Plaintiff "generally gets along well with authority figures, can follow instructions well, can pay attention, and handle simple daily tasks[.]" [Tr. 29].

8

Based on this evidence and that which documented Plaintiff's alleged physical impairments, ALJ Lovitt concluded that "the overall medical evidence is not properly supportive of total disability based upon the objective clinical findings, the longitudinal treatment history, and the totality of the evidence" and that "[t]he reasonable limitations derived from the medical evidence of record and the claimant's testimony are fully accounted for in the residual functional capacity as explained above." [Tr. 29–30]. Thus, contrary to Plaintiff's argument in this appeal, ALJ Lovitt thoroughly considered Plaintiff's alleged mental impairments, discussed why the objective medical evidence did not support any mental limitations in her work-related abilities, and then explicitly stated his reasoning for declining to include them in the RFC finding—because he accounted only for limitations reasonably supported by the record evidence. [Tr. 30]. While Plaintiff may have wished for ALJ Lovitt to discuss the evidence concerning Plaintiff's mental impairments that he discussed during step two again during his RFC assessment, it was not necessary for him to do so since it is clear he considered it earlier in his analysis. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that when sufficient factual findings are made elsewhere, an ALJ need not "spell out every fact a second time"); *see also Walker v. Barnhart*, 258 F. Supp. 2d 693, 700 (E.D. Mich. 2003) (concluding that "the ALJ's assessment of Plaintiff's RFC was not flawed simply because she did not specifically cite to Plaintiff's depressive disorder" where "[t]he record indicates that the ALJ considered the relevant medical evidence and hearing testimony, including evidence pertaining to Plaintiff's depression, when determining what Plaintiff could and could not do"); *Freeman v. Kijakazi*, No. CV 21-75-DLB, 2022 WL 2496188, at *7 (E.D. Ky. July 6, 2022) ("In reviewing the opinions of the state agency medical consultants, it is clear that the ALJ's decision that Plaintiff's mild limitations have no impact on her ability to work is supported by substantial evidence. . . . The ultimate RFC only

includes mental limitations that affect what [the claimant] can do in a work setting. . . . As Plaintiff's mild limitations do not prevent her from performing basic work activities, there was no reason that the ALJ was required to incorporate the mental limitations in Plaintiff's RFC.") (cleaned up) (citations omitted).

Plaintiff emphasizes that she "has never argued that a finding of mild mental limitations automatically requires an ALJ to adopt specific mental limitations in his RFC," [R. 15, p. 2], and appropriately so. *See Avers v. Kijakazi*, No. 3:20-CV-01433, 2021 WL 4291228, at *10, *11 (N.D. Ohio Sept. 21, 2021) (explaining that courts in the Sixth Circuit "have routinely rejected" the position that a "finding of mild restrictions axiomatically warrants mental restrictions in the RFC" because "[t]he reasonable inference is that non-severe mental limitations do *not* impact the RFC") (counting cases) (emphasis in original); *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL 3587217, at *6 (S.D. Ohio Aug. 21, 2017) ("Contrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not *require* inclusion of mental limitations into the RFC.") (counting cases) (emphasis in original).

Rather, Plaintiff argues "that an ALJ cannot find credible mental limitations at one step at the sequential evaluation process, then ignore those credible mental limitations at a later step," and that "mild limitations may require work-related limitations in the RFC and the ALJ has a duty to consider and explain his consideration of that issue." [R. 15, pp. 2, 4]. She offers that "[i]f the ALJ had explained in his RFC assessment why the limitations found credible at step three had no impact on [Plaintiff's] ability to work, this case would not be before this Court." *Id.* But nowhere in ALJ Lovitt's opinion does he find "credible" any mental limitations that would limit Plaintiff's work-related abilities or otherwise affect the RFC determination. After all, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of*

10

*Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)); *see also* SSR 96-4p, 1996 WL 374187, at *1 (S.S.A. July 2, 1996) ("A 'symptom' is not a 'medically determinable physical or mental impairment[.]'").

Moreover, for the reasons just outlined, ALJ Lovitt provided a detailed assessment of Plaintiff's mental health treatment history, the medical opinion evidence detailing her mental state, Plaintiff's subjective complaints concerning her alleged mental limitations, and Plaintiff's presentation at the administrative hearing before determining that her mental limitations were mild and that none were severe enough to warrant additional accommodations in the RFC. *See generally* [Tr. 21–30]. ALJ Lovitt was not required to restate previous findings again in the RFC analysis. *See Plotkowski v. Comm'r of Soc. Sec.*, No. 2:20-CV-12011, 2022 WL 413371, at *6 (E.D. Mich. Jan. 18, 2022), report and recommendation adopted sub nom. *Plotkowski v. Saul*, No. 20-CV-12011, 2022 WL 407079 (E.D. Mich. Feb. 9, 2022) (explaining that "[t]he lack of reference to mild psychological limitation in the RFC did not constitute error" where "the ALJ adequately 'considered' the mild limitation" earlier in the sequential analysis—by explaining her findings at step two, "citing treating records" concerning the alleged mental limitations, and discussing plaintiff's presentation during the administrative hearing—"and by extension, explained her reasons for declining to include any degree of psychological limitation in the RFC"); *Mark E. v. Kijakazi*, No. 20-CV-2047-PAM-JFD, 2021 WL 6066260, at *9 (D. Minn. Dec. 7, 2021), report and recommendation adopted sub nom. *Mark J. E. v. Kijakazi*, No. CV 20-2047-PAM-JFD, 2021 WL 6063631 (D. Minn. Dec. 22, 2021) ("[A] proper RFC analysis need not be identical to findings at step two, but the analysis must demonstrate that the entire record was considered in the formulation of the RFC, including mental limitations found to be non-severe."). Here, ALJ Lovitt's analysis demonstrates that the entire record was considered in formulating Plaintiff's RFC, and

11

substantial evidence supports ALJ Lovitt's decision not to include additional limitations to account for Plaintiff's alleged mental impairments. This Court thus finds no error.

Lastly, but along the same lines, Plaintiff briefly suggests ALJ Lovitt erred in his finding at step four in the sequential evaluation because he "did not even attempt to explain how [Plaintiff] could perform her past relevant semi-skilled work [as a proof machine operator] with the mental limitations he found credible." [R. 10, p. 6]. At this step, it remains the claimant's burden to prove that she cannot perform her past relevant work as actually or generally performed. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Studaway v. Sec'y of Health & Hum. Serv.*, 815 F.2d 1074, 1076 (6th Cir. 1978) (explaining that a claimant "must prove an inability to return to his former type of work and not just to his former job"). "In evaluating whether the claimant can perform her past relevant work, the ALJ must make specific factual findings regarding: (1) the claimant's RFC; (2) the physical and mental demands of the past job/occupation; and (3) whether the claimant's RFC would permit a return to his or her past job or occupation." *Langford v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-00665-CEH, 2023 WL 3058160, at *28 (N.D. Ohio Apr. 24, 2023) (citing SSR 82-62, 1982 SSR LEXIS 27, at *10 (S.S.A. Jan. 1, 1982)).

Plaintiff suggests that because proof machine operation requires "alertness and close attention" and has "a high reasoning level," it "would have challenged her admittedly limited ability to concentrate, persist, and maintain pace, as well as to adapt and manage herself." *Id.* at 7. These arguments, however, largely mirror those concerning ALJ Lovitt's RFC finding, which this Court has already rejected, having found that ALJ Lovitt thoroughly considered Plaintiff's alleged mental impairments throughout his opinion and specifically in crafting the RFC. *See Teresa G. v. Kijakazi*, No. 1:21-CV-00072-HBB, 2022 WL 3329281, at *7 (W.D. Ky. Aug. 11, 2022) ("[I]n regard to Plaintiff's argument about the ALJ's finding about past relevant work as it relates to the

RFC finding, the Court has previously found that the ALJ's RFC determination is supported by substantial evidence and comports with applicable law. This directly undercuts any argument proffered by Plaintiff.").

Indeed, at step four in the sequential evaluation, an ALJ must determine a claimant's ability to perform past relevant work, if any, considering the specific, proven limitations accounted for in the claimant's RFC. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 427 (6th Cir. 2007) (citing 20 C.F.R. § 404.1520(f)) ("If at step four of the sequential evaluation process the ALJ finds that an individual's RFC allows him to perform work he has done in the past, a finding of not disabled will be made."); *see also* 20 C.F.R. § 404.1520(a)(iv), (f) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. . . . Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment . . . with the physical and mental demands of your past relevant work. . . . If you can still do this kind of work, we will find that you are not disabled.").

And ALJ Lovitt did just that. First, he explained at the outset of his analysis the requirement that he "determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work," and that, "[i]f the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled," but if she "is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step." [Tr. 18]. Once he arrived at step four, ALJ Lovitt then continued:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform the Proof Machine Operator job as actually and generally performed. At the hearing, the vocational expert was presented with a hypothetical question where

13

> he was asked whether an individual with the same vocational profile as the claimant, in terms of age, education, and work experience, with the above residual functional capacity, could perform the claimant's past relevant work. The vocational expert testified that the hypothetical individual would be able to perform the Proof Machine Operator job as actually and generally performed (Hearing Testimony). Given this evidence, the undersigned concludes that the claimant is capable of performing this past relevant work.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, as the vocational expert provided adequate testimony to support that the testimony was consistent with current vocational resources, and with any supplementation of data not expressly contained in the DOT being properly supported by the personal training and acquired experience in the vocational field. The testimony of the vocational expert has been accepted as persuasive in this matter, as it appears well supported.

[Tr. 30]. Because ALJ Lovitt found that Plaintiff's alleged mental limitations were not as severe as alleged and thus did not warrant restrictions in the RFC, he appropriately declined to consider how those limitations would impact her ability to perform her past relevant work. *See Langford*, 2023 WL 3058160, at *28 ("Although Langford argues that that ALJ failed to sufficiently consider Langford's neuropathy and erred by not adopting the mental limitations of her treating source opinions, as set forth above, substantial evidence supports the ALJ's findings and the RFC. Therefore, Langford's final issue is entirely dependent upon a successful resolution of her first two issues. Having found that the ALJ properly explained his reasoning for discounting the opinions detailed above and that substantial evidence supports the RFC, Langford has not demonstrated that the ALJ erred . . . [in] finding that Langford had the ability to perform past work based on the limitations set forth in the RFC.").

Beyond the alleged failure to accommodate or discuss her mental limitations again at this step, Plaintiff does not argue that ALJ Lovitt erred in any other respect in his determination that Plaintiff could perform her past relevant work. Having already thoroughly considered Plaintiff's arguments surrounding ALJ Lovitt's assessment of her alleged mental limitations, and having

14

determined that the RFC is nevertheless supported by substantial evidence in the record, the Court finds no error in ALJ Lovitt's determination that Plaintiff's RFC does not preclude performance of her past relevant work as a proof machine operator.

As a closing note, an administrative law judge's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). Although Plaintiff has pointed to evidence that could possibly support a finding that she has some mental limitations that affect her ability to work, there is also substantial evidence to support ALJ Lovitt's findings to the contrary.

### IV. Order

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This the 22nd day of May, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY

Cc: counsel of record